Filed 7/22/21  In re Marilyn H. CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
### SECOND APPELLATE DISTRICT
### DIVISION THREE

| | |
|---|---|
| In re MARILYN H., a Person Coming Under the Juvenile Court Law. | B308251 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>KARINA H.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. No. 19CCJP02633A |

APPEAL from an order of the Superior Court of Los Angeles County, Sabina A. Helton, Judge. Affirmed.

Mitchell Keiter, under appointment by the Court of Appeal, for Defendant and Appellant.

Rodrigo A. Castro-Silva, County Counsel, Kim Nemoy, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

This is Karina H.'s (mother) second appeal in dependency proceedings involving her four-year-old daughter Marilyn. In the first appeal, we affirmed the juvenile court's jurisdiction findings and disposition order declaring Marilyn a dependent of the court and removing the child from mother's custody due in part to mother's mental health issues. (*In re Marilyn H.* (Nov. 17, 2020, B302057 [nonpub. opn.] (*Marilyn I*).) In this appeal, mother challenges the court's order terminating her reunification services. Mother contends insufficient evidence supports the court's findings that it would be detrimental to Marilyn to return her to mother's custody and that the Department of Children and Family Services (Department) provided mother reasonable reunification services. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In October 2019, the court sustained a dependency petition filed on Marilyn's behalf, which alleged: (1) mother's mental health and emotional problems, including a diagnosis for "major depression recurrent with psychotic symptoms," and her failure to take prescribed psychotropic medication, placed the child at risk of serious physical harm (Welf. & Inst. Code,[2] § 300, subd. (b); b-1 allegation); (2) John M.'s (father) history of substance abuse rendered him incapable of providing regular care to the child, and his drug use and mother's failure to protect Marilyn

---

[1] A detailed summary of the factual background leading up to the jurisdiction and disposition hearing appears in *Marilyn I.*

[2] All undesignated statutory references are to the Welfare and Institutions Code.

from that drug use place the child at serious risk of physical harm (§ 300, subd. (b); b-2 allegation); and (3) mother's mental health issues, which caused Marilyn's sibling to be declared a dependent of the court, placed Marilyn at serious risk of physical harm (§ 300, subd. (j); j-1 allegation). The court declared Marilyn a dependent of the court and ordered her removed from her parents' custody.

The court awarded mother and father reunification services. As to mother, the court ordered her to: complete a parenting program and mental health counseling; undergo psychological and psychiatric evaluations; participate in individual counseling addressing her history of mental health issues and how to properly care for Marilyn; and take all prescribed psychotropic medications. The court also ordered mother to submit to 10 random drug tests to show her "marijuana levels" have decreased. The court awarded mother three hours of visitation per week.

Mother appealed from the disposition order.[3] We affirmed the court's jurisdiction findings and disposition order in *Marilyn I.*

In late March 2020, the Department filed its first status report. Mother completed a parenting program, and she had two jobs. Her housing situation remained unstable. The Department had previously assisted her with filing a low-income housing application, and she recently secured a housing voucher to live at a motel. The Department was providing mother transportation

---

[3] Father also appealed, but his court-appointed appellate counsel filed a no-merit brief under *In re Phoenix H.* (2009) 47 Cal.4th 835. We dismissed father's appeal in August 2020.

assistance so that she could visit Marilyn and attend court-ordered services.

After the jurisdiction and disposition hearing, mother's drug tests showed a steady drop in the concentration of marijuana metabolites in mother's system, decreasing from 170 ng/ml in mid-January until mother started testing negative in early February 2020. In late February, mother submitted one positive sample—with a 20 ng/ml concentration of marijuana metabolites—before testing negative again in early March.

Mother continued her psychiatric treatment at Tri-City Mental Health Services (Tri-City), where she was receiving services leading up to the jurisdiction and disposition hearing. Mother's psychiatrist wasn't available when the Department's social worker contacted Tri-City. A Tri-City representative told the social worker to call back the next day, but it doesn't appear the social worker did.

Mother was also seeing a new therapist, whom she brought to a meeting with the social worker early in the review period. According to the therapist, mother "has been available and attentive [during] their appointments." The therapist was unwilling to disclose any other details about his impressions of mother's "functional ability or psychological assessment" until he spoke to his supervisor about what he was allowed to share.

The therapist also couldn't provide any insight on mother's treatment because mother was still in the "assessment phase." The therapist wasn't sure what mother needed to focus on "based on the sessions she had up until that point." The social worker told the therapist mother needed to address her case issues, including her inability to protect Marilyn, her history of harmful

relationships, her past trauma, and her "overall functional ability."

Through late March 2020, mother visited Marilyn twice a week for about two hours each visit. Mother brought food and activities for Marilyn, and the child usually appeared happy to see her. Early in the review period, mother often made inappropriate remarks about the dependency case in front of Marilyn, which would upset the child. Mother's behavior improved after one of the social workers provided mother "psychoeducation regarding healthy ways to support Marilyn's transition during visits."

In late August 2020, the Department filed its second status report. Mother had stopped visiting or otherwise contacting Marilyn around April 2020. Mother also stopped contacting her therapist around the same time. The social worker was having difficulty staying in contact with mother, who no longer had a "stable telephone number." Between April and July 2020, the social worker spoke to mother on only one occasion, during which mother's behavior was belligerent and erratic.

In late July 2020, the social worker spoke to mother's psychiatrist at Tri-City. Mother occasionally "pop[ped] in for services," but she hadn't consented to the psychiatrist releasing details of her treatment to the Department. The social worker asked the psychiatrist to coordinate a group call with mother because the Department was having difficulty contacting her. The psychiatrist never followed up.

In late September 2020, mother contacted the Department. She provided her new address and asked for video or telephonic visits with Marilyn, which the social worker agreed to arrange. Mother claimed she completed her services at Tri-City, was

working to arrange additional services near her new home, and was still taking Seroquel and Prozac. But the Department had yet to receive psychological or psychiatric evaluations for mother or proof that she had enrolled in or completed mental health and individual counseling.

In October 2020, after several continuances, the court held a review hearing under section 366.21, subdivision (e). The court found mother and father were in partial compliance with their case plans and had made minimal progress toward alleviating the issues leading to Marilyn's dependency. The court found it would be detrimental to Marilyn's health and safety to return the child to her parents' custody. The court terminated mother's reunification services but continued father's services because he had only recently been released from prison.

Mother filed a notice of intent to file a writ petition, which we construed as a notice of appeal from the order terminating her reunification services.

## DISCUSSION

### 1.    The Detriment Finding

Mother first contends the court erred when it found at the review hearing that it would be detrimental to return Marilyn to her custody.[4] According to mother, the fact that she maintained two jobs, regularly visited Marilyn for several months without incident, and did not have any mental health breakdowns during

---

[4] Mother did not forfeit this argument by failing to object to the detriment finding below. (See *In re Brian P.* (2002) 99 Cal.App.4th 616, 623 [a parent does not waive argument that insufficient evidence supports the challenged order by failing to object below].)

6

the review period show the court erred in failing to return Marilyn to her custody. We are not persuaded.

At the initial review hearing, the court must return a child to her parent "unless the court finds, by a preponderance of the evidence, that the return of the child to … her parent … would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child." (§ 366.21, subd. (e)(1).) The risk of detriment to support a removal order at a post-disposition review hearing need not be the same type of risk that gave rise to the jurisdiction findings or a prior removal order. (*In re Joseph B.* (1996) 42 Cal.App.4th 890, 900 [out-of-home placement must continue if the child faces a current risk of detriment "regardless of whether that detriment mirrors the harm which had required the child's removal from parental custody"].)

In determining whether it would be detrimental to return a child to her parent's custody, the court may consider the parent's past conduct and the present circumstances. (*In re Cole C.* (2009) 174 Cal.App.4th 900, 917.) Specifically, the court may look to several factors, including: (1) the parent's awareness of the child's needs and the problems that gave rise to the dependency proceedings; (2) psychological evaluations addressing whether returning the child to her parent would be detrimental to the child's well-being; (3) the parent's decision to maintain relationships with people whose presence would be detrimental to the child; (4) the parent's ability to maintain a stable home environment; (5) the parent's progress in court-ordered services; and (6) the manner in which the parent has conducted herself around the child in the past. (*Constance K. v. Superior Court* (1998) 61 Cal.App.4th 689, 704–705 (*Constance K.*).)

7

We review a finding that it would be detrimental to return a child to her parent's custody at the six-month review hearing for substantial evidence. (*In re Mary B.* (2013) 218 Cal.App.4th 1474, 1483.) We view the evidence in a light most favorable to the prevailing party and indulge all reasonable inferences to uphold the court's ruling. (*Ibid*.) Substantial evidence supports the court's finding that there would be a substantial risk of detriment to Marilyn's safety or well-being if the child were returned to mother's custody.

To be sure, mother made some progress in completing her court-ordered case plan during the first several months of the review period. She regularly visited Marilyn, and, aside from some hiccups early on, the visits were largely a success. That is, although mother's comments about Marilyn's dependency case would sometimes upset the child, mother usually came prepared with food and activities for Marilyn and the child appeared to enjoy the visits. Mother's drug tests also showed a steady decrease in marijuana levels from mid-January through early March 2020. Mother also completed a parenting class and, during the first several months of the review period, found a new therapist and continued receiving psychiatric services through Tri-City.

But mother's progress fell apart around early April 2020. She completely stopped visiting or otherwise contacting Marilyn. And, before she stopped contacting the child, mother had yet to progress past monitored visitation. Thus, mother had yet to show she could safely and responsibly care for the child while alone in mother's care.

Throughout the last six months of the review period, mother's communications with the Department were unstable.

The social worker had difficulty contacting mother and, when contact was made in July 2020, mother acted in an erratic and belligerent manner toward the social worker. Mother also stopped contacting her therapist around April 2020. Although the therapist tried contacting mother, she either ignored his efforts or had changed her contact information without advising him of the change. While she remained in contact with her psychiatrist, mother never consented to the psychiatrist releasing details about mother's treatment to the Department. The Department, therefore, was unable to obtain any meaningful information about mother's progress in her psychological and psychiatric treatment before the review hearing.

As a result of mother's failure to remain in contact with her therapist and Marilyn during the last six months of the review period, together with her refusal to consent to her psychiatrist releasing information about her treatment, neither the Department nor the court were able to assess whether mother had made adequate progress in addressing the mental health issues that led to Marilyn's dependency. (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 441 (*Raymond R.*) [it is the parent's responsibility to maintain contact with the Department and to participate in reunification services, including visitation].) On this record, it was more than reasonable for the court to find returning Marilyn to mother's custody would create a substantial risk of detriment to the child's health and safety. (*Constance K.*, *supra*, 61 Cal.App.4th at pp. 704–705.)

## 2. The Reasonable Services Finding

Mother next contends insufficient evidence supports the court's finding that the Department provided her reasonable reunification services. We disagree.

9

When the juvenile court orders reunification services, the child welfare agency must provide the family a plan that is tailored to the family's needs and designed to eliminate the circumstances that gave rise to the children becoming dependents of the court. (*In re Taylor J.* (2014) 223 Cal.App.4th 1446, 1451.) The agency "must make a good faith effort to develop and implement a family reunification plan. [Citation.] '[T]he record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained reasonable contact with the parents during the course of the service plan, and made reasonable efforts to assist the parents in areas where compliance proved difficult … .' [Citation.]" (*Amanda H. v. Superior Court* (2008) 166 Cal.App.4th 1340, 1345 (*Amanda H.*).) The agency must also find and maintain contact with service providers and keep the parent informed of whether his or her progress is consistent and compliant with the court-ordered case plan. (*Taylor J.*, at p. 1452.)

The agency's efforts to provide reunification services do not have to be perfect, but they must be reasonable given the circumstances of the case. (*In re T.G.* (2010) 188 Cal.App.4th 687, 697.) Services are reasonable if the agency identifies the family's issues, offers a case plan designed to address and eliminate those issues, maintains reasonable contact with the parents, and makes reasonable efforts to assist the parents when compliance with the case plan is difficult. (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.) We review a finding that the agency provided reasonable reunification services for substantial evidence. (*In re Alvin R.* (2003) 108 Cal.App.4th 962, 971.)

10

Here, substantial evidence supports the court's finding that the Department provided mother reasonable reunification services. By the time the court declared Marilyn a dependent, the Department had identified mother's mental health issues that led to her losing custody of Marilyn. Specifically, the Department was aware that mother had been diagnosed with "major depression recurrent with psychotic symptoms." The Department also tailored mother's case plan to address those issues by requiring mother: (1) to undergo psychological and psychiatric assessments; (2) to participate in individual counseling to address, among other things, her mental health issues; and (3) to continue taking her prescribed psychotropic medications.

By the beginning of the review period, mother already had access to psychiatric services, including a prescription for psychotropic medication, and, shortly after the review period began, she obtained a new therapist to address the psychological component of her case plan. Although mother's therapist initially was unaware of what issues mother needed to focus on during treatment, the social worker explained that mother needed to address "case issues," including her inability to protect Marilyn, her history of harmful relationships, her past trauma, and her "overall functional ability." The Department also provided mother financial support so that she could travel to her visits with Marilyn, and it helped mother secure temporary housing.

Mother's progress in her case plan broke down in April 2020, about six months into the review period. Mother blames that breakdown on the Department, complaining it failed to maintain sufficient contact with her or obtain any psychological or psychiatric assessments. But, as we explained above, the blame for that breakdown falls primarily on mother. Specifically,

11

mother largely disappeared for the final six months of the review period. The Department had difficulty contacting her, and she completely cut off contact with her therapist and Marilyn around April 2020. While the Department could have made more regular contact with mother's psychiatrist, mother never consented to allowing her psychiatrist to release details about her treatment to the Department before the review hearing. So, even had the Department maintained more regular contact with the psychiatrist, mother blocked the agency from staying apprised of her progress in her psychiatric treatment. Thus, it was mother's failure to sufficiently engage in the services she had access to— i.e., visitation with Marilyn and access to mental health services—that prevented her from making adequate progress in her case plan. (*Raymond R.*, *supra*, 26 Cal.App.4th at p. 441; see also *In re Nolan W.* (2009) 45 Cal.4th 1217, 1233 [reunification services are voluntary and cannot be forced on an unwilling or indifferent parent].)

This case is distinguishable from *Patricia W. v. Superior Court* (2016) 244 Cal.App.4th 397, on which mother relies to assert the Department is to blame for failing to secure mother's mental health assessments. In *Patricia W.*, the child welfare agency was aware that the mother's mental health issues caused her child to be removed from her custody. (*Id.* at pp. 422–423.) But the agency in *Patricia W.* made no effort to obtain an accurate diagnosis for mother's mental health issues, and it failed to tailor a case plan that specifically addressed those issues. (*Id.* at pp. 401, 422–427.) In this case, on the other hand, the Department was aware of mother's specific psychiatric diagnosis, and it tailored a case plan to address mother's mental health issues. Mother also had access to mental health service providers,

including a psychiatrist and a therapist. The problem in this case wasn't the lack of an adequate plan, but rather mother's lack of participation in the plan she was provided.

In short, substantial evidence supports the court's finding that the Department provided mother reasonable reunification services.

## DISPOSITION

The court's October 14, 2020 findings and order terminating reunification services are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

THOMAS, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.