26 Cal.App.4th 436 (1994)
31 Cal. Rptr.2d 551
In re RAYMOND R. et al., Persons Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Plaintiff and Respondent,
v.
RICHARD V., Defendant and Appellant.
Docket No. D020706.
Court of Appeals of California, Fourth District, Division One.
June 29, 1994.
*437 COUNSEL
M. Elizabeth Handy, under appointment by the Court of Appeal, for Defendant and Appellant.
Lloyd M. Harmon, Jr., County Counsel, Susan Strom, Chief Deputy County Counsel, and Patrice D. Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.
Carl Fabian for Minors.
OPINION
TODD, Acting P.J.
Richard V. appeals after the court severed his parental rights and ordered his dependent twin sons, Raymond R. and Rudy R., be *438 placed for adoption. (Welf. & Inst. Code,[1] § 366.26, subd. (b)(1).) Richard contends the San Diego County Department of Social Services (the Department) did not make a sufficient effort to locate him, thus the reunification services provided him were insufficient to support a finding his parental rights should be terminated. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Raymond and Rudy were taken into protective custody on March 6, 1992, after their mother, Blanca R.,[2] told social workers and relatives she could not care for them and "sometimes [felt] like throwing the babies in the trash." The babies were then five weeks old.[3] The maternal grandmother reported Blanca disappeared for days, leaving the babies with her but without provision for their care. Richard appeared at the grandmother's home only to take Blanca's disability check. The grandmother saw Richard beat Blanca on various occasions, including during her pregnancy.
The Department petitioned to declare Raymond and Rudy dependents on March 10, alleging they were at risk of serious physical harm because Blanca was violent to others in their presence (§ 300, subd. (b)) and the parents' whereabouts were unknown (§ 300, subd. (g).)
Blanca and Richard telephoned the Department on March 16 and said they were homeless. The parents agreed to meet with a social worker the following day at their friend's house. On March 17, Richard told the social worker they were heroin users and had "used" the week before. The parents said they wanted to participate in drug rehabilitation in order to care for their children. The social worker provided them with referrals to drug testing, counseling and parenting classes and gave them 30 bus coupons. The parents requested their friend's house be used for a mailing address.
Richard and Blanca appeared with counsel at a hearing on April 15 and denied the allegations in the petition. The court ordered supervised visitation at a minimum of twice per week. The Department amended the petition on April 17, alleging under section 300, subdivision (b), the parents were unable to provide care for Raymond and Rudy due to heroin abuse.
Richard and Blanca appeared at the detention hearing on April 17. The court detained Raymond and Rudy in foster care, finding their initial removal from parental custody was necessary, based on a prima facie showing *439 they were at risk of harm under section 300, subdivision (b). The parents were ordered to drug test, with the provision a missed test would be considered a "dirty" test. If the parents succeeded in testing negative for drugs, Raymond and Rudy would be placed in the maternal grandmother's home with expanded parental contact.
By the jurisdictional and dispositional hearing on June 24, the Department reported the parents had missed all scheduled drug tests and had not attended counseling or parenting classes. Richard last visited Raymond and Rudy on April 20. Blanca telephoned the social worker to report Richard had severely beaten her. The social worker learned Richard was in Donovan prison. He did not attend the hearing. The court declared Raymond and Rudy dependents under section 300, subdivision (b), and continued their placement in foster care. The court dismissed the allegation the parent's whereabouts were unknown under section 300, subdivision (g).
Richard's reunification plan required him to remain sober, participate successfully in substance abuse and parenting programs, visit the boys and obtain stable housing. He was also ordered to keep the social worker advised of his address and telephone number and notify the Department if he became hospitalized or incarcerated. The court ordered the Department to mail the reunification plan to Richard's last known address. If Richard "protested" the reunification plan, the court stated it would conduct a special hearing within two weeks.
At the six-month review in December (§ 366.21), the social worker reported Richard had not contacted the Department or participated in reunification and his whereabouts were unknown. A "parent search" of local law enforcement files, prison and jail records, probation and parole records, motor vehicle records and other sources did not locate Richard. The court continued the review hearing for three months to allow the Department to attempt to find him.
The social worker learned from Richard's probation officer that Richard had been arrested several times between February 1992 and February 1993, but had been incarcerated only from June 12, 1992, through July 10, 1992. The probation officer said he had no idea where Richard was, he did not "check in" and was "strung out" on heroin. Correspondence sent to Richard at the address he had provided was returned to the Department.
Richard did not appear at the review hearing on March 25, 1993. The court found reasonable services had been offered and continued the boys' placement in foster care.
*440 At a review hearing on September 10 (§ 366.22), the social worker reported she encountered Richard and Blanca in a hospital parking lot after Blanca gave birth to their infant daughter.[4] Although the social worker encouraged the parents to contact her, provide her with their address and visit the boys, she did not hear from them. Richard did not attend the hearing. The court found it was not probable Raymond and Rudy would be returned to their parents within six months and terminated reunification services. The court continued the boys in foster care and set a selection and implementation hearing. (§ 366.26.)
The Department recommended parental rights be terminated and adoption be selected for Raymond and Rudy. Richard was personally served with notice of the selection and implementation hearing while in custody. He waived his appearance. On January 19, 1994, the court found the boys adoptable and terminated parental rights. This appeal followed.

DISCUSSION
(1a) Richard contends the finding he was offered or provided adequate reunification services cannot be supported by the evidence because the Department failed to make reasonable efforts to locate him. He argues as a result he had inadequate notice of the hearings and the Department should have searched for him at least every six months.
The child dependency statutory scheme requires parents be notified of all proceedings involving the child. (§ 302, subd. (b).) When a social worker, police officer or probation officer takes a child into protective custody, that person must immediately inform the parent and provide a written statement which explains the parent's procedural rights and the preliminary stages of the dependency investigation and hearing. (§ 307.4, subd. (a).)
The parent must also be notified of the detention hearing and given a copy of the dependency petition "if the whereabouts of each parent ... can be ascertained by due diligence...." (§ 311, subd. (a).) If it appears the parent cannot read, notice may be given orally. (§ 311, subd. (a).) The parent must be informed of the conditions under which the child will be released, the hearings which may be required, the right to counsel, the privilege against self-incrimination and appeal rights. (§ 307.4, subd. (a).) The parent must also be notified of each review hearing by mail or personal service. (§ 366.21.)
The failure to locate a parent or guardian after a good faith attempt "shall not be construed to permit a new defense to any juvenile or judicial *441 proceeding or to interfere with any rights, procedures, or investigations accorded under any other law." (§ 307.4, subd. (b).) (2) A parent's general appearance at the detention hearing will be considered a waiver of the parent's right to challenge adequacy of notice of the proceedings. (In re B.G. (1974) 11 Cal.3d 679, 688-692 [114 Cal. Rptr. 444, 523 P.2d 244]; In re Gilberto M. (1992) 6 Cal. App.4th 1194, 1198 [8 Cal. Rptr.2d 285].)
(1b) Here the Department located Richard on March 16, 1992, 10 days after Raymond and Rudy were taken into protective custody. The social worker promptly met with Richard and provided him with services, including counseling, drug testing and transportation, before the first hearing. Richard furnished an address where he wished notices to be sent.
The record shows the court appointed counsel for Richard on March 25 and he appeared with counsel at a readiness hearing on April 15. At that time he was served with a copy of the petition and the court informed him of his trial and hearing rights. Richard appeared at the detention hearing two days later and denied the allegations in the petition. The allegation his whereabouts were unknown under section 300, subdivision (g) was accordingly dismissed. There is abundant evidence Richard had notice of the proceedings because he appeared and participated in them.
Richard suggests the Department had a duty to track him continually throughout the dependency process even after he had been identified, contacted by a social worker, apprised of the proceedings, provided with counsel and participated in hearings. There is nothing in the statutory scheme to support this assertion. The Department has a duty initially to make a good faith attempt to locate the parents of a dependent child. Once a parent has been located, it becomes the obligation of the parent to communicate with the Department and participate in the reunification process.
In 1992, the Legislature enacted section 316.1, subdivision (a), which provides the parent must furnish a means of contact by mail for the Department and court: "Upon his or her appearance before the court, each parent or guardian shall designate for the court his or her permanent mailing address. The court shall advise each parent or guardian that the designated mailing address will be used by the court and the social services agency for notice purposes unless and until the parent or guardian notifies the court or the social services agency of a new mailing address in writing." Although this statute became effective January 1, 1993, after the Department filed this petition, Richard was expressly ordered to inform the Department of his address, telephone number and any hospitalization or incarceration. He cannot blame the Department for his disappearance.
*442 Richard complains his reunification services were inadequate because of the lack of contact with the Department. The purpose of providing services is to eliminate the conditions which led to removal of the child from parental custody. (§ 361.5.) Richard was unable to care for his children because of his admitted heroin habit. The Department immediately provided him with drug counseling and testing. At the time the court ordered services, the court specifically invited him to seek modification if he "protested" any aspect of the plan. No objection was raised.
The record shows Raymond and Rudy lived in the same foster home since their removal in March 1992. Richard knew of their placement because he visited them in April 1992. Nevertheless he ceased to visit from that time through the termination of his rights in January 1994. During an encounter with the social worker in April 1993, Richard was encouraged to contact the Department and visit Raymond and Rudy. He did not do so.
Although represented by counsel from the inception, Richard apparently failed to keep in contact with her. At the selection and implementation hearing, Richard's counsel stated she provided him with the Department's assessment and he did not respond. Richard signed a waiver indicating he did not wish to appear at the hearing.
Substantial evidence supports the court's order terminating Richard's parental rights. Richard had adequate notice of the proceedings and was offered reunification services to overcome the cause of his children's dependency. He simply failed to participate in any program or make a meaningful effort to reunify with his children.

DISPOSITION
Judgment affirmed.
Benke, J., and Huffman, J., concurred.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.
[2] Blanca's parental rights were also terminated. Her other three children, not fathered by Richard, were also dependents of the juvenile court. Because Blanca does not appeal, we abbreviate her factual history in this proceeding.
[3] The boys were born on January 28, 1992.
[4] The Department has petitioned to declare the infant a dependent.