Filed 12/2/14  R.M. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| R.M.,<br><br>    Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF SAN BERNARDINO COUNTY,<br><br><br><br>SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES,<br><br>    Real Party in Interest. | E061688<br><br>(Super.Ct.Nos. J248177 & J248178)<br><br>OPINION |

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  Christopher B. Marshall, Judge.  Petition denied.

Gloria Gebbie for Petitioner.

No appearance for respondent.

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for real party in interest.

Petitioner R.M. (father) challenges the decision of the juvenile court to terminate reunification services and set a hearing under Welfare and Institutions Code section 366.26[1] to consider a permanent plan for his two children. He argues that the juvenile court abused its discretion when it found that the reunification services offered to him were reasonable. For the reasons explained *post*, we disagree with this contention and, therefore, deny the petition.

FACTS[2]

On February 22, 2013, the San Bernardino County Department of Children and Family Services (CFS) filed petitions on behalf of nine-year-old A.M. and 11-year-old J.M. pursuant to section 300, subdivisions (b), (c) and (g). The children's mother was deceased and father had an extensive history of violence, drug use, and criminal activity. The petitions further alleged the children were suffering emotional damage and extreme anxiety as a result of father's violence and assaultive behavior with the mother in front of them.

The children were living with the maternal grandparents under a temporary guardianship since January 2012, and a family court granted father weekend visits to be supervised by the paternal grandparents. It was reported that the children

_____

[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.

[2] We have incorporated the record in the related appeal, case No. E058679.

were afraid to visit father even under the supervision of the paternal grandparents. A report was received by the child abuse hotline that father pulled J.M.'s hair, twisted his head, and put his fists up in the child's face in a threatening way. In addition, he threatened the maternal grandfather in the children's presence.

The children were detained with the maternal grandparents; father was granted supervised visitation and ordered to stay away from the grandparent's home and have no contact with the children outside of CFS.

In the report prepared for the jurisdiction/disposition hearing, it was recommended that the children remain with the maternal grandparents until such time as the father completed a reunification plan. The recommended plan for father included general counseling, anger management, parenting education and a substance abuse program.

Father was the only individual who testified at the contested jurisdiction/disposition hearing held on April 23, 2014. He denied allegations that he had harassed the grandparents or had unauthorized contact or attempted such contact with the children. He denied he was currently using drugs, stating he had been clean since April 2, 2012. He believed that his children had been brainwashed by the maternal grandparents; therefore, they did not want to live with him. With regard to the case plan, he stated: "I'm willing to do what I have to, but I don't feel I need to. " He stated that he had done nothing wrong and should have his children placed with him.

The juvenile court made the requisite jurisdictional findings and ordered reunification services. The court observed that father was an "unbelievably angry man" and was "over the top." When the court was informed that a psychological evaluation had not been included in the case plan, it indicated that it wanted father to see a psychologist to do an evaluation so that it could get a professional recommendation on how to work with him. It added a psychological evaluation to father's case plan.

Following a hearing on May 2, 2013, the court issued a permanent restraining order against father.[3]

Father's case plan was amended to require that he complete general counseling, a psychiatric/psychological evaluation, a parenting education program, anger management education, substance abuse testing and an outpatient substance abuse program.

In the six-month status review report, the social worker recommended that the minors remain in the maternal grandparents' home and that reunification services be continued for father. The minors continued to state they wanted to be placed with their maternal grandparents and were doing well in that placement. With respect to father, the social worker noted that it was initially very difficult to get in touch with him, but that he eventually came to the office and the case plan

---

[3] Father appealed from the jurisdiction and disposition orders in addition to the order for a permanent restraining order. Father's counsel filed a non-issue brief and the case was dismissed as abandoned on August 28, 2013. (Case No. E058679.)

was gone over with him. Father was referred to High Desert Center to address substance abuse, anger management and parenting services. Father did not follow through with the intake meetings and another referral was sent to High Desert on October 10, 2013, to enroll father in these programs. Father was enrolled in the Medtox random drug testing program, but he failed to show for tests scheduled for April 3 and 19 and May 1 and 13, 2013. Father was referred for a psychological evaluation with Dr. Roger Morgan of Anchor Psychological Services in Victorville, but a date for the testing had not yet been set.

Father attended most of the weekly visits with the children and was described as behaving appropriately during those visits.

The six-month review hearing went forward on October 24, 2013. The guardians' attorney informed the court that prior to the start of the hearing, father approached the maternal grandparents and, in front of the minors, stated: "Fuck you. You ain't shit, faggot ass." The deputies had to get involved to separate the family.

According to their attorney, the children confirmed that father had made these statements, and that father went back and screamed at the grandmother again. The minors were so upset that they remained in the playroom and did not appear in court. The juvenile court suspended visits and, thereafter, had to order that father be removed from the courtroom due to his continued outbursts.

The contested six-month review hearing went forward on December 12, 2013.  Father did not appear at the hearing, but father's counsel advised the court that the paternal grandmother indicated father had entered an in-patient rehabilitation program in the desert area.  The court ordered eight pages of Facebook posts attached to the social worker's report be received into evidence.  Those posts were made by father on J.M.'s Facebook page, indicating that father had violated the court's order by making contact outside of visits.

The court was told that the psychological evaluation had not been accomplished, and that father had not been drug testing prior to entering the rehabilitation program.  The court ordered the minors to remain dependents and that reunification services to continue.  Father's visits remained suspended, but the social worker was authorized to reinstate visits if father completed his rehabilitation program and continued to participate in services.  The social worker was given authority to allow unsupervised visits with the paternal grandparents on condition that father not have contact with the minors during those visits in any way, shape, or form.

By the time of the 12-month status review report, CPS recommended that services be terminated and a section 366.26 hearing be set.  It was noted that father enrolled in Set Free Men's Ranch Program, attending a 60-day sober living program from December 12, 2013 through February 9, 2014.  Father failed to drug test as scheduled on April 24, May 12 and 30, 2014.

6

Visitation was reinstated in March 2014, and visits went well until April 10, 2014, when it was reported that father struck J.M. on the arm. After this incident, the children indicated they no longer wanted to visit with father.

On June 12, 2014, the date initially set for the 12-month review hearing, father requested to set a contested hearing, indicating there was an issue whether reasonable services had been provided to him. The court ordered that visitation be suspended pending the contested hearing.

At the contested 12-month review hearing , the juvenile court received into evidence the June 12 review report and attachments. The attachments included several pages of drug testing referrals, which reflected father did not test. Also attached were six pages of certificates showing father's participation in the Set Free Men's Ranch Program and completion of a parenting and anger management programs in October 2013.

The social worker, Larry Sears, testified at the hearing that he had not previously received any documents from father concerning completion of a parenting class and learned that day for the first time that father had completed an anger management class. Father was also supposed to participate in a drug testing program. Sears spoke to father on April 17, 2014, when father came to the office upset about visits. Sears informed him that he would be mailing him drug-testing information; he did so by mailing it to the last address listed for father in the CFS' file. Sears stated he did not see father after that date and did not follow up with

7

him as he did not have a good phone number to reach him. He indicated that he did not call paternal grandmother, although he had her phone number.

Sears further testified that he met with father in February 2014 after father completed the Set Free Men's Ranch Program and made arrangements to meet with him again to go over his programs and have him sign consent for treatment forms. Father did not appear for this meeting and Sears did not see him again until the April encounter. Because father had not signed the consent forms, Sears was unable to refer him to counseling during the prior six months. Sears indicated he had made arrangements for father to undergo a psychological evaluation with Dr. Morgan in November 2013, but he was unable to make father aware of this because he was in the Set Free Men's Ranch Program. After that time, Dr. Morgan was no longer available and new consents were needed. When he saw father in April, he tried to talk to him about the psychological evaluation and the need to sign consent forms, but the latter was very angry and left. Sears also told father that they needed to meet the following month to have the consent forms signed, but father never called to schedule an appointment. In June, Sears learned from the maternal grandparents that father had left the state to seek employment.

At the conclusion of the hearing, the juvenile court observed that although father had certificates that he had finished parenting, anger management, and the Set Free Men's Ranch programs, it did not have any reports to show that he had benefitted from receiving services. It further noted that father had bypassed and

8

not communicated with the social worker. There was no evidence to rebut that the social worker did not have any way of contacting father, adding that the social worker does not have that obligation. In contrast, father could have easily contacted the social worker.

The court also found that father understood that he had an obligation to drug test, but refrained from doing so. Thus, it had no evidence that he had actually been clear and sober. Finally, father's conduct throughout the course of the case demonstrated that he did not benefit from the anger management program. Father had not addressed any of the central issues that brought this case to the court.

The court found that CFS provided reasonable services, terminated father's services, and set a section 366.26 hearing.

DISCUSSION

The standard of review when a parent challenges the reasonableness of the reunification services provided or offered is whether substantial evidence supported the juvenile court's conclusion that such services were reasonable. (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.) Substantial evidence is evidence that is reasonable, credible, and of solid value to support the conclusion of the trier of fact. (*In re Jasmine C.* (1999) 70 Cal.App.4th 71, 75.) "All conflicts must be resolved in favor of the respondent and the reviewing court must indulge in all

9

reasonable inferences to support the findings of the juvenile court." (*In re Albert B.* (1989) 215 Cal.App.3d 361, 375.)

Father asserts that CFS did not make reasonable efforts to make arrangements for a psychological evaluation as directed by the court. The social worker could have easily contacted him while he was in an in-patient drug program. Furthermore, father asserts that it would have taken only minimal efforts by the social worker to maintain reasonable contact with him. However, it was not the social worker's obligation to take him by the hand and escort him to classes— even assuming this would have been possible. (*In re Michael S.* (1987) 188 Cal.App.3d 1448, 1463, fn. 5.) We reject the suggestion that CFS "had a duty to track him continually throughout the dependency process even after he had been identified, contacted by a social worker, apprised of the proceedings, provided with counsel and participated in hearings. There is nothing in the statutory scheme to support this assertion. . . . Once a parent has been located, it becomes the obligation of the parent to communicate with the Department and participate in the reunification process." (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 441.)

Father was made aware of the requirements of the service plan and the need to sign consent forms in a meeting with a social worker in March 2013. He was also present when the court ordered a psychological evaluation. Throughout the course of these proceedings, he chose to go his own way without communicating with the social worker. He could have easily done so, and it was his obligation to

10

keep the social worker informed of his whereabouts.  Substantial evidence supports the juvenile court's order.

DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ\
P. J.

We concur:

McKINSTER\
J.

MILLER\
J.