Filed 7/18/22 J.C. v. Superior Court CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| J.C., | |
| Petitioner, | E079013 |
| v. | (Super.Ct.No. J285609) |
| THE SUPERIOR COURT OF SAN BERNARDINO COUNTY, | OPINION |
| Respondent; | |
| SAN BERNARDINO COUNTY CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ. Annemarie G. Pace, Judge. Petition denied.

David E. Wohl for Petitioner.

No appearance for Respondent.

Tom Bunton, County Counsel, and David Guardado, Deputy County Counsel, for Real Party in Interest.

1

## INTRODUCTION

Petitioner J.C. (mother) filed a petition for extraordinary writ pursuant to California Rules of Court, rule 8.452, challenging the juvenile court's order terminating reunification services as to her child, I.C. (the child), and setting a Welfare and Institutions Code[1] section 366.26 hearing. She contends the court erred in finding that reasonable services were offered to her. Mother has requested a stay of the section 366.26 hearing pending review of this writ. We deny the writ petition, as well as the request for stay.

## FACTUAL AND PROCEDURAL BACKGROUND

On June 17, 2020, the San Bernardino County Children and Family Services (CFS) filed a dependency petition on behalf of the child, who was two years old at the time. The petition alleged that she came within the provisions of section 300, subdivisions (b) (failure to protect) and (g) (no provision for support). It specifically alleged that mother had a history of substance abuse and domestic violence, mother was incarcerated, and the whereabouts of the child's father were unknown.[2]

The social worker filed a detention report stating that CFS received a referral alleging general neglect, caretaker absence/incapacity, and emotional abuse. The referral stated mother was arrested for assaulting her boyfriend, and there was no one to care for her daughter.

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise noted.

[2] The child's father is not a party to this writ.

2

The juvenile court held a detention hearing on June 18, 2020, and detained the child in foster care. It ordered services to be provided pending the development of a case plan and supervised visits once a week.

*Jurisdiction/Disposition*

The social worker filed a jurisdiction/disposition report on August 3, 2020, recommending that the child be removed from mother's custody, be declared a dependent, and that mother be provided with reunification services. The social worker interviewed mother on July 1, 2020, and mother said she had a prior dependency case in 2018 in Arizona, when she had a domestic violence charge with a boyfriend. She said she went through detox in jail and attended a substance abuse program. Mother further stated that she was experiencing a significant amount of anxiety due to the COVID-19 quarantine and the responsibilities of being a single mother, and her doctor intended to send her to a substance abuse treatment program for one month.

The social worker observed that mother was "highly motivated to engage in services to have her child returned" and was "extremely cooperative with CFS." The social worker attached a case plan that included the requirements that mother participate in counseling, a domestic violence program, an anger management program, a parenting education program, and an outpatient substance abuse program.

The court held a jurisdiction/disposition hearing on August 6, 2020. Mother's counsel stated her belief that the child was not at risk with mother. She said mother was "not opposed to doing any services that the Department ask[ed] of her[;] she just believe[d] she [could] accomplish those services with the child in her custody." The

3

court set the matter for mediation on September 8, 2020, and a hearing for September 15, 2020.

The social worker filed a mediation report stating that the parties met and reached an agreement. CFS agreed to dismiss the substance abuse allegation, and mother agreed to participate in the case plan, including random testing, outpatient substance abuse services, parenting education, individual counseling, and domestic violence classes. The social worker reported that mother self-enrolled in an aftercare program and anger management. CFS recommended that the child be returned to mother on family maintenance at the September 15 hearing date, based on a memorandum with additional information for the court (CFS 6.7) filed on September 14, 2020. The memorandum indicated that, on August 17, 2020, mother participated in a Child and Family Team Meeting (CFTM) and provided evidence that she was participating in all her case services. Mother reported the names of her providers. The outcome of the CFTM was mother being allowed unsupervised visits, and the social worker reported that those visits were going well. The social worker further reported that a home evaluation was done on September 10, 2020, and the home was found to be appropriate.

The court held a hearing on September 15, 2020, and found that the child came within section 300, subdivisions (b) and (g), and dismissed the substance abuse allegation. It declared the child a dependent, returned her to mother's custody under family maintenance, approved the case plan, and ordered mother to participate in family maintenance services.

4

*Subsequent Petition*

On October 23, 2020, the social worker filed a petition pursuant to sections 342 and 387, alleging that the child came within section 300, subdivisions (a) (serious physical harm), (b) (failure to protect), and (g) (no provision for support). The social worker reported that CFS received a referral on October 20, 2020, alleging that mother was drinking and hitting the child. When law enforcement arrived at the home, mother was "completely drunk" and "belligerent," and the child had bruising on her temple that was "consistent with being hit." Mother stated that she did not want her child and CFS should have taken the child from her. The police talked to a family friend, who said mother had been consistently drunk for about two weeks.

The court held a hearing on October 26, 2020, and found the previous disposition had been ineffective and detained the child in foster care. It ordered supervised visits, once a week.

On November 12, 2020, the social worker filed another jurisdiction/disposition report, recommending that the court sustain the latest petition, remove the child from mother's custody, and provide mother with reunification services. The social worker observed that mother seemed to be highly motivated to have the child returned to her, but when she had the child under her care, she did not provide the child with a safe and loving home. The social worker asserted that mother would go through the motions of completing the services, but "she has clearly not shown improvement." The social worker stated that the following preplacement preventive services were provided, but

were not effective in preventing or eliminating the need for removal of the child from the home: parenting education, a domestic violence program, and drug testing.

The court held a contested jurisdiction/disposition hearing on December 7, 2020. It sustained the petition, ordered that the child remain a dependent, and ordered reunification services for mother.

*Six-month Status Review*

The social worker filed a six-month status review report on May 27, 2021, recommending that the court terminate mother's services and set a section 366.26 hearing. The social worker reported that on May 17, 2021, mother told her that she loved her daughter and did not want to lose her, but felt she needed a "significantly longer amount of time to reunify" due to her struggles with alcoholism and mental health. She said she had a family history of mental illness and addiction, and that she was receiving mental health services through High Desert Psychological Services, Inc., including seeing a doctor who was providing medication management, mental health assessment and diagnostic services, and she was seeing a clinical therapist. As to compliance with her case plan, the social worker reported that mother completed parenting education, anger management, and domestic violence services through A Better Way. Mother also completed inpatient substance abuse services and had attended some outpatient services.

The social worker further reported that mother was having consistent and appropriate visits with the child, and that she had progressed to unsupervised visits. However, mother was arrested on April 25, 2021, for felony vandalism following a domestic dispute with her landlord/roommate, and her visits were returned to supervised

6

visits due to her violent behavior, destruction of her residence, and allegations that she was under the influence of alcohol at the time of the incident.

Mother told the social worker she felt there was a lack of mother/child bonding, which had been present since the child was an infant and was removed from her care in Arizona. Mother stated that she did parent child interactive therapy (PCIT) with the child during that reunification process, but due to the child being an infant who was not able to engage, mother did not feel those bonding services worked. The social worker reported that mother was currently seeing a therapist with ACT Family Counseling, who was going to be working with mother and the child on strengthening their bond. Nonetheless, the social worker opined that returning the child to mother would create a substantial risk of detriment to the physical and/or emotional well-being of the child. She reported that mother had completed the majority of her court-ordered treatment plan but had failed to demonstrate any benefit from her services. The social worker noted a pattern in mother's behavior, where she could go a few months with a positive trajectory, only to fall back into alcohol abuse and/or domestic violence. The social worker further reported that on December 3, 2020, mother stated she was not ready to have the child returned to her on family maintenance. Mother said she could not raise the child on her own, and that she was getting ready to attend a six-month inpatient alcohol treatment program and then a sober living program. She stated that she might be ready to have the child returned to her in about one year. Mother also said the child required too much time from her that she did not have, due to her work obligations.

The court held a six-month review hearing on July 16, 2021. The licensed clinical social worker (A.K.), who had been providing mother with therapy since May 2021, testified. She said she had 12 sessions with mother and testified that mother had made improvements. Mother also testified and indicated that she had completed all of her services. She testified that the services she participated in were not referred to her by CFS; rather, she found them by herself and enrolled on her own. Mother felt like she had benefitted from those services and went on to describe what she had learned from her anger management program and inpatient treatment. Mother said she also sought out Vivitrol injections (to help with her alcohol craving), psychiatry, PCIT, a home visitor's program, and a family support program. She stated that she was currently doing PCIT with a therapist (M.F.) and had been since March 2021. She met with the therapist once a week. The therapist helped her with "bonding and attachment" with the child and understanding how to correctly parent and discipline the child. Mother confirmed that she was also in therapy with a licensed clinical social worker (A.K.), who helped her with her personal issues and past traumas. When asked if she would participate if the court were to offer her more services, she said, "Absolutely a thousand percent."

Mother was asked how many substance abuse programs she had completed in her life, to date, and she said three. She said she completed the last program in February 2021, but relapsed in April 2021. As to random testing, mother said she tried to participate, but stopped going since her name was not in the system. The social worker confirmed there were issues with the system. Mother also admitted that she caused

8

damage to her roommate's property in April 2021, and he had a restraining order against her.

The court noted that mother was continuously engaged in services and had made some progress, and that she had consistently visited the child. The court said the visits were reportedly positive, and it believed there was a bond between mother and the child. It then continued her services. Mother's counsel asked, "And then in terms of PCIT, could we have authority for the minor to participate in PCIT with the mother?" The court gave authority for the child to participate in PCIT if it was in a supervised setting.

On August 27, 2021, the court approved a change in the case plan to require mother to participate in general counseling, outpatient treatment, a 12-step program, and substance abuse testing.

*Twelve-month Status Review*

The social worker filed a 12-month status review report on November 22, 2021, recommending that the court terminate mother's services and set a section 366.26 hearing. Mother reported that she was maintaining her sobriety and attending substance abuse classes through her church and was receiving counseling. The social worker reported that mother had her referral for random substance testing renewed on September 8, 2021. Mother admitted that she had not been testing and informed the social worker that she had not been available.

The social worker continued to have concerns regarding mother's participation in and benefit from services. Although mother indicated that she had completed services, she had not yet provided proof. The social worker reported that "CFS has offered and/or

9

provided reasonable services" to mother, and mother had "shown a pattern of escalating actions and no benefit from the services that have been offered to her."

On January 19, 2022, the social worker filed additional information to the court (form CFS 6.7), stating that on January 1, 2022, mother was involved in a single vehicle accident and was arrested for two counts of driving under the influence (DUI) and a bribery charge for attempting to bribe an officer with sex to avoid arrest. The social worker also reported that she spoke with mother's therapist (A.K.), and that mother had provided progress reports. Mother also submitted some of her certificates of completion. The social worker stated, "It is clear that the mother has participated in multiple services to include those provided by the Department, and those she accessed on her own." However, CFS continued to be concerned she had not benefitted from services, especially in light of her recent arrest.

The social worker filed another CFS 6.7 report on March 9, 2022, and stated that mother had "clearly received and completed all services available to her," but she had failed to benefit, continued to abuse alcohol, and lacked a bond with the child, which placed the child at greater risk for continued abuse.

On May 4, 2022, the social worker filed a CFS 6.7 report and reviewed mother's services. She reported that mother completed an outpatient substance abuse program at St. John of God on February 23, 2020, anger management and parenting education programs on November 9, 2020, and a domestic violence program on December 16, 2020. Mother had consistently attended counseling over the life of the case, including PCIT, and was currently receiving counseling services at High Desert Psychological

Services. Mother continued to attend recovery meetings at One Step to Freedom at Calvary Chapel and began receiving regular Vivitrol injections to help her maintain sobriety. The social worker observed that despite completing her case plan and her continued participation in counseling and substance abuse services, mother continued to engage in domestic disputes while under the influence of alcohol. The social worker reported that on April 12, 2022, she emailed mother her renewed random drug testing referral, informed her she was re-enrolled in random drug testing, and asked if she was continuing to participate in ongoing substance abuse services and counseling. The social worker also reported that she submitted a referral for substance abuse services to a drug and alcohol counselor, who attempted to reach mother four times.

After numerous continuances, the court held a contested 12-month hearing on May 6, 2022. Mother's current social worker, who was assigned to the case after the jurisdiction/disposition hearing, testified that mother had completed all her services. She said that mother last relapsed in January 2022, and she submitted a referral for substance abuse services and re-enrolled mother in testing at that time. The social worker said the last time she spoke with mother was on December 31, 2021, but she had been communicating since then by text and email. She last sent mother a text and email on April 12, 2022. When asked if all the services mother participated in were ones that she accessed on her own, the social worker confirmed, and said mother "was very proactive." The social worker then added that mother "was provided information through the Department, and, when offered services, she stated she was already enrolled in those services."

11

The social worker further stated that mother never felt she had a bond with the child. When asked what services she had referred mother for in order to help the bond, the social worker said, "Through her referral for counseling services, [mother] was attending individual therapy with [M.F.] in Acts Family Care Counseling, and [mother] informed me that she was participating in parent-child interactive therapy with [M.F.] at family counseling." The social worker added that mother told her she was switching to a different therapist who would provide PCIT and in-patient services through High Desert Psychological Services.

On cross-examination, the social worker was asked if she personally provided mother with referrals for all her services, and the social worker said the referrals "were provided to her" before she was assigned the case. The social worker stated that mother was engaged in the services and successfully completed them.

Mother testified on her own behalf and said she was never given any referrals by CFS but sought out her own services because she wanted to be proactive. Mother felt that she had absolutely benefitted from the services, and she was ready to take the child back into her home that day. Yet, she also admitted that since she completed her outpatient services in February 2021, she had relapsed three times. Nonetheless, she felt like she benefitted from her outpatient services.

Mother further testified that she was never referred to PCIT by CFS, although she did request it in May 2021 and October 2021. Mother said she was originally seeing therapist M.F., who was supposed to do PCIT, but since M.F. would not meet in person with her and the child, she no longer used her services. Mother testified she thought

12

counseling would have helped her bond with the child, and stated that if she had gotten more help, she believed some of the relapses could have been prevented. Mother then testified that she had consistently visited the child and had 10 visits since March 2022. She said, "I mean, me and [the child] are extremely bonded."

In closing arguments, mother's counsel contended that the social worker admitted a critically important part of reunification would be PCIT, but there was no PCIT provided. He argued, "If there isn't, then there's a service not being provided that I think makes the services as a whole unreasonable." He stated that mother was "clearly battling her alcoholism" and he thought she was "doing a very good job now." Counsel asked the court to make a finding of no reasonable services and offer her another six months of reunification services. County counsel argued that the provision of reasonable services was not an issue, since mother told the social worker she was enrolled in everything, and there was no doubt that mother engaged in and completed her programs. He further acknowledged mother's complaint that she did not get PCIT, and argued that PCIT was "great for parenting skills, but I'm not sure that relates to substance abuse. And substance abuse is clearly the thing that she is struggling with."

The court found by clear and convincing evidence that reasonable services were provided as recommended by the social worker. It stated, "And the proof is kind of in the pudding in this case because everybody agrees that Mom completed the services." The court stated the problems with anger management, domestic violence, and substance abuse were ongoing and posed a significant risk to the child. It did not believe the lack of a PCIT referral was critical in this case, and remarked, "PCIT has nothing to do with

13

substance abuse, domestic violence, and anger management. It has to do with parenting and the relationship, which I think Mom addressed through counseling, parenting, and visitation." The court adopted the social worker's recommended findings and orders, terminated services, and set a section 366.26 hearing.

## DISCUSSION

### The Court Properly Found That Reasonable Services Had Been Provided

Mother argues the court erred in finding reasonable services had been provided since CFS failed to provide any referrals or services to her; rather, she found her own services. Specifically, mother contends CFS failed to maintain reasonable contact with her. She also argues that the "most significant failure" was the failure to provide PCIT services and claims that, had she been given such services, "it is likely she would not have relapsed by drinking." Mother claims she lacked a maternal bond with the child, and CFS became aware of such, yet did not offer her "bonding services" that would have given her the bond and love that would "motivate her to stop drinking." Mother asks that we vacate the order terminating her services and setting a section 366.26 hearing, order that a reasonable reunification plan be devised and implemented, order visitation, and grant custody of the child to her. We conclude the court properly found that reasonable services were provided.

A. *Relevant Law*

To support a finding that reasonable services were offered or provided, "the record should show that the supervising agency identified the problems leading to the loss of custody, offered services designed to remedy those problems, maintained *reasonable*

14

contact with the parents during the course of the service plan, and made *reasonable* efforts to assist the parents in areas where compliance proved difficult . . . ." (*In re Riva M.* (1991) 235 Cal.App.3d 403, 414.)

"In reviewing the reasonableness of the services provided, this court must view the evidence in a light most favorable to the respondent. We must indulge in all legitimate and reasonable inferences to uphold the verdict. If there is substantial evidence supporting the judgment, our duty ends and the judgment must not be disturbed." (*In re Misako R.* (1991) 2 Cal.App.4th 538, 545.)

B. *There Was Substantial Evidence to Support the Court's Finding of Reasonable Services*

We have reviewed the record and find mother's argument unavailing. She first contends that CFS failed to maintain reasonable contact with her. She points out that she reported numerous times for drug testing and was turned away because she was not "in the system." It is unclear how this relates to CFS's alleged failure to maintain contact with her. Mother then asserts that when she relapsed in connection with her DUI arrest, around January 1, 2022, it took three and half months for her to receive a referral for services, and she points out that the social worker testified in May 2022 that she last spoke with her in January 2022. We note, however, that the social worker testified she last spoke with mother in December 2021, but they were communicating through texts and emails. She specifically said she emailed mother on January 14, 2022, and texted and emailed her on April 12, 2022. The social worker said she told mother in her email in January 2022 that she needed a new consent form. (The social worker could not refer

15

mother to services after her relapse since her consent form had expired.) The social worker also testified that she reached out to mother by phone, but was unable to reach her, so she left voicemails. We note that, "[t]he Department has a duty initially to make a good faith attempt to locate the parents of a dependent child. Once a parent has been located, it becomes the obligation of the parent to communicate with the Department and participate in the reunification process." (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 441.)

Mother next contends she was not provided with any referrals or services. However, the record belies this claim. The social worker reported in the 12-month status review report that CFS "offered and/or provided reasonable services" to mother. At the contested 12-month review hearing, the social worker testified that the services mother participated in were ones that she accessed on her own; however, she also testified that mother "was provided information *through the Department*, and, when offered services, she stated she was already enrolled in those services." On cross-examination, when asked if she personally provided mother with referrals for all her services, the social worker said the referrals "were provided to [mother]" before she was assigned the case. We also note that, in the CFS 6.7 report filed on January 19, 2022, the social worker stated, "It is clear that the mother has participated in multiple services to include *those provided by the Department,* and those she accessed on her own." (Italics added.) Furthermore, in the CFS 6.7 report filed on May 4, 2022, the social worker reported that she emailed mother her renewed random drug testing referral on April 12, 2022, and informed her she was re-enrolled in random drug testing. The social worker also reported

16

that a referral for substance abuse services was submitted to a drug and alcohol counselor, also on April 12, 2022. We are aware of no rule prohibiting parents from locating and accessing services on their own, if they choose to do, when those services are deemed acceptable by child protective services agencies such as CFS.

As to mother's specific claims that CFS failed to provide PCIT, and that had she received PCIT it was likely she would not have relapsed into drinking, such claims have no merit. At the six-month review hearing, mother testified that she was currently doing PCIT with her therapist, M.F., and had been since March 2021. Mother said she met with the therapist usually once a week, and the therapist helped her with "bonding and attachment" with the child and how to correctly parent and discipline the child. The social worker confirmed in her May 4, 2022 report that mother participated in PCIT with M.F. At the 12-month review hearing, the social worker testified, "Through her referral for counseling services, [mother] was attending individual therapy with [M.F.] in Acts Family Care Counseling, and [mother] informed me that she was participating in parent-child interactive therapy with [M.F.] at family counseling." Although it is not clear from the record if CFS referred mother to PCIT, it does clearly show that mother was participating in PCIT.

Consequently, mother's claim that had she received PCIT, it was likely she would not have relapsed into drinking, is groundless. She asserts that she had no maternal love or bond with the child and argues that she was not offered bonding services "that would give her the maternal bond and love . . . that would, in turn, motivate her to stop drinking." Mother's assertions are highly speculative. Moreover, we note, in contrast to

17

mother's assertions about a lack of bonding with the child, that mother told the social worker she loved the child and did not want to lose her. Further, the social worker observed that mother seemed to be highly motivated to have the child returned to her. Additionally, at the 12-month hearing, mother testified that she and the child were "extremely bonded." She also testified, "[B]eing an alcoholic is not fun. . . . And I have my good times and I have my bad times. But regardless, I'm committed to getting through. I'm committed to myself. I'm committed to that child. And I will never stop fighting for her." Mother's own words indicate that she felt bonded with the child and was motivated to stop drinking to get her back. Unfortunately, mother simply continued to drink, as noted by her admission that she relapsed three times in 2021, after she had completed outpatient services.

In sum, the record shows that mother was provided with reasonable services, and, as the parties agreed, she completed her services. The problem was that mother failed to benefit from those services. We conclude the evidence was sufficient to support the court's finding that mother was provided with reasonable services. We also note mother does not dispute the court's finding that she failed to participate regularly and make substantive progress in her case plan. Therefore, there is no basis to conclude the court erred in terminating her services and setting a section 366.26 hearing.

DISPOSITION

The writ petition and the request for a stay are denied.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

FIELDS _____

J.

We concur:

RAMIREZ _____

P. J.

MILLER _____

J.

19