Filed 6/17/26  In re Jason S. CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re JASON S., a Person Coming Under the Juvenile Court Law. | B350551 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FERNANDO S.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 19CCJP07688F) |

APPEAL from an order of the Superior Court of Los Angeles County, Stephen C. Marpet, Commissioner. Affirmed in part and conditionally reversed and remanded in part.

Terence M. Chucas, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Jane Kwon, Deputy County Counsel, for Plaintiff and Respondent.

————————————

Fernando S. (Father) appeals from an order terminating his parental rights as to Jason S. He argues the Los Angeles County Department of Children and Family Services (DCFS) failed to give him adequate notice of the Welfare and Institutions Code section 366.26[1] hearing and failed to comply with its obligations under the federal Indian Child Welfare Act of 1978 (ICWA; 25 U.S.C. § 1901 et seq.) and California's Indian Child Welfare Act (Cal-ICWA; Welf. & Inst. Code, § 224 et seq.). We affirm the juvenile court's determination Father received proper notice, but we agree with the parties conditional reversal and remand is necessary to ensure Cal-ICWA compliance.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.      Child Welfare History and Current Case**

Father, Jason, and Jason's mother Perla V. (Mother) previously received voluntary family maintenance services from DCFS from September 2018 to May 2019, and again from March 2020 to March 2021.

This case began after then-three-year-old Jason was found alone in a laundromat in January 2022. On January 18, 2022, the juvenile court authorized DCFS to detain Jason from Mother. Mother said Father was not involved with Jason and she did not know Father's whereabouts. DCFS later learned Father was incarcerated at Folsom State Prison.

At the detention hearing that month, Mother appeared but Father did not. Based upon minute orders from Jason's earlier dependency proceedings, the juvenile court found Father was Jason's presumed father. Jason was removed from parental

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

custody. DCFS was ordered to arrange for Father to appear virtually from prison at the next hearing.

DCFS filed a first amended and second amended section 300 petition.

Father appeared for the first time via Webex from prison at the June 2022 arraignment hearing and was appointed counsel. Counsel entered a general denial on behalf of Father and provided the juvenile court with a notification of mailing address form listing Father's address at Folsom State Prison. In August 2022, DCFS learned Father would be released from prison in November 2022 and wanted to reunify with Jason.

At the August 2022 adjudication and dispositional hearing, Father appeared by Webex with his counsel present. The juvenile court sustained the section 300 petition and removed Jason from parental custody. The court ordered family reunification services for Father with monitored visits.

## II. Review Period

Father did not attend the progress hearing held in November 2022 but was represented by counsel. He was released from prison that day and later contacted DCFS.

At the six-month review hearing in February 2023, Father appeared with counsel. Father's visits with Jason had been inconsistent and he had not enrolled in court-ordered services. The juvenile court continued Father's reunification services for six months.

The next review hearing was held in March 2023. Father did not appear at the hearing but was represented by counsel. Father was detained by federal immigration authorities in Calexico, California. The juvenile court continued Father's reunification services for six months.

3

DCFS spoke with Father via telephone in May 2023. Father reported he had been deported to Tlaxcala, Mexico, and wanted to continue reunification services with Jason. The social worker gave Father his attorney's phone number.

Another review hearing was held in August 2023. Father did not appear but was represented by counsel. The juvenile court set the matter for a contested hearing in September 2023 and ordered parents' counsel to notice their clients. DCFS was ordered to contact the Mexican social services agency to help Father obtain appropriate reunification program referrals in Mexico.

In September 2023, DCFS received two slightly different addresses for Father in Tlaxcala, from a paternal aunt, but was unable to find them in Google Maps. On September 13, 2023, DCFS mailed contact letters to both addresses with information about social services available in Mexico. The following day, DCFS reached Father via telephone. Father reported he wanted to receive services in Mexico, and he agreed to contact the Mexican social services agency the next day and to call Jason soon. Father gave DCFS his mailing address in Tlaxcala, which was different from those provided by the paternal aunt.

Father did not appear at the September 2023 review hearing but was represented by counsel. The matter was continued to November 2023 to allow DCFS to follow up with the Mexican social services agency. In October 2023, DCFS provided additional information to Father with program referrals in Mexico, and he reported visiting the office and having a pending appointment. Father said he was busy working long hours every day and could not call Jason.

At the next review hearing in November 2023, the court interpreter unsuccessfully tried to contact Father from the hearing via the WhatsApp messaging platform. DCFS reported Father had not contacted Jason recently and had not yet enrolled in services in Mexico. The court terminated Father's reunification services, while Mother's were continued for six months.

A review hearing was held for Mother in January 2024, where Father was represented by counsel. Parents' counsel were ordered to notice their clients of the next hearing date.

A 24-month review hearing for Mother was held on February 28, 2024. Father appeared by Webex and was represented by counsel. DCFS reported Father called Jason's caregiver twice in January and February 2024 to ask for money; on one occasion, he spoke with Jason for five minutes. The juvenile court terminated Mother's reunification services and set a section 366.26 permanency planning hearing for June 25, 2024. The court ordered Father "to return to this court on June 25th to address a permanent plan which could include adoption and/or guardianship."

## III.  Permanency Planning Period

DCFS initiated a due diligence search for Father on May 7, 2024. Notice for the June 25, 2024, hearing was sent via mail to Father at an address in Tlaxcala that partially reflected the address he had provided DCFS in September 2023. Father did not appear at the June 25 hearing but was represented by counsel. DCFS reported there was an active due diligence search for Father, who had not recently contacted DCFS or Jason's caregiver. The juvenile court found notice to Father was not proper and continued the hearing to December 5, 2024.

5

In July 2024, DCFS mailed notices of the December hearing to 18 addresses in California and Oregon it had uncovered in its due diligence search. Most could not be delivered, but two were delivered and two remained in transit by December 2024. The social worker also attempted to contact Father via e-mail, telephone, and social media platforms. In response to one e-mail, a woman who shared other children with Father contacted DCFS and provided an updated telephone number for him. The woman had no home or mailing address for Father, but said he was in Tijuana, Mexico. The social worker tried the number she provided, which "pulsed" with no response. By the end of November 2024, DCFS reported Father's whereabouts remained unknown.

On the day of the section 366.26 hearing, Father's counsel filed a notification of mailing address form on his behalf with a new mailing address in Tijuana, and an e-mail address. The form also confirmed the phone number that had been given to DCFS in November 2024.

Father appeared at the December 5, 2024, hearing via WhatsApp from Mexico. The juvenile court identified adoption as Jason's permanent plan, found Father had not received proper notice, and ordered DCFS to perfect notice and interview Father. The court ordered Father "back April 11th, 2025, for this hearing–for the further hearing to address a permanent plan."

Thereafter, DCFS attempted to contact Father via multiple avenues, without success. In January 2025, it e-mailed him the notice of the April 11 hearing and sent the notice to a Tijuana address (similar to the address provided by Father in Dec. 2024) via United States Postal Service (USPS) International Registered Mail. In February 2025 at the post office's recommendation,

DCFS corrected the address to include "Mexico," and sent the notice via registered mail to the address again. In March 2025, DCFS sent notice of the April 11 hearing via first-class mail to two California addresses for Father. DCFS also tried to call Father in January, February, and March 2025 at the most recent phone number he had given to the court, but the number "pulsed" without answering.

On March 27, 2025, DCFS reported it continued its due diligence search for Father and that Father had not had contact with Jason since December 5, 2024.

On April 11, 2025, the day of the hearing, Father's counsel filed a new form notifying the court of Father's phone number and mailing address in Tijuana. The phone number was the same as before, and the mailing address was substantially similar but included some additional details.

Father's counsel was at the April 11, 2025, hearing, but Father was not. The juvenile court identified adoption as Jason's permanent plan and continued the hearing to August 8, 2025, to allow DCFS "to provide timely 1st class notice to . . . father." On April 17, 2025, DCFS sent Father the hearing notice via USPS first-class mail to the Tijuana address Father provided, but it may have contained a typographical error.

Father's counsel attended the August 8, 2025, section 366.26 hearing, but Father did not. The juvenile court found notice to Father was not proper and ordered DCFS to give him notice by USPS first-class mail to the address he had provided in Mexico. The hearing was continued to November 6, 2025.

On August 11, 2025, DCFS sent notice of the November 6 hearing to Father by USPS International Registered Mail to the

Tijuana address his counsel had provided on April 11, 2025. The notice included the hearing date and stated "the court may terminate parental rights and free the child for adoption." (Boldface omitted.) USPS tracking information indicated the parcel arrived in Mexico and delivery was attempted on September 2, 2025, but the addressee was "not available." Deliveries were unsuccessfully attempted again on September 4 and 24, 2025, and ultimately, the package was returned to DCFS. DCFS tried to call Father on three occasions in September 2025, without success. In October 2025, Jason's caregivers reported Father had not contacted them.

Father did not appear at the November 6, 2025, section 366.26 hearing, but was represented by counsel. The juvenile court could not hear the matter and sua sponte continued it to November 7; at the request of Father's counsel, the hearing was further continued to November 12, 2025.

At the November 12, 2025, continued section 366.26 hearing, Father was not present but was represented by counsel. The juvenile court's interpreter and Father's counsel both unsuccessfully tried to reach Father from court.

The parties disputed whether DCFS's August 11, 2025, notice to Father complied with the requirements of section 294, subdivision (f). The juvenile court determined "notice was given as required by law," and it terminated parental rights as to Jason.

Father timely appealed. (See § 395, subd. (a)(1); Cal. Rules of Court, rule 8.406(a)(1).)

# DISCUSSION

## I. Father Received Adequate Notice

Father complains DCFS did not adequately notify him of the section 366.26 hearing. We disagree.

### A. Standard of Review

Because the facts regarding notice are not disputed, we review de novo the juvenile court's conclusion Father received adequate notice. (See *In re D.B.* (2025) 111 Cal.App.5th 592, 603 [application of dependency statutes]; *In re Jayden G.* (2023) 88 Cal.App.5th 301, 308 [due process] (*Jayden G.*).)

### B. DCFS Complied with Section 294

California law provides that presumed fathers, like Father, are entitled to notice of section 366.26 hearings. (§ 294, subd. (a)(2); see also *In re A.H.* (2022) 84 Cal.App.5th 340, 350 (*A.H.*).) Section 294 governs the procedure noticing those hearings and prescribes several alternative means of providing notice to parents. (See *A.H.*, at p. 368; see also § 294, subd. (f)(1)–(7).)

DCFS argues it provided adequate notice to Father of the section 366.26 hearings under section 294, subdivision (f)(1) and (5). Subdivision (f)(5) provides "[i]f the residence of the parent is outside the state, service may be made as described in paragraph (1), (3), or (4) or by certified mail, return receipt requested." (§ 294, subd. (f)(5).) In turn, subdivision (f)(1) provides "[i]f the parent is present at the hearing" when the section 366.26 hearing is scheduled, "[t]he court shall direct the parent to appear for the proceedings and then direct that the parent be notified thereafter only by first-class mail to the parent's usual place of residence." (§ 294, subd. (f)(1).)

We agree with the juvenile court that DCFS provided Father statutorily adequate notice of the November 6, 2025, section 366.26 hearing.[2] On February 28, 2024, Father was present at the hearing and the court ordered him back for the section 366.26 hearing, originally scheduled for June 25, 2024. Father did not appear, and during that time, DCFS conducted a due diligence search for him. His whereabouts remained unknown until December 5, 2024, when his counsel notified the court of his Tijuana address.

It is undisputed Father was living in Tijuana, Mexico during 2025. On April 11, 2025, his counsel filed a new form notifying the juvenile court of a revised Tijuana mailing address. DCFS sent notice of the November 6, 2025, hearing to that address via USPS International Registered Mail on August 11, 2025. Despite three attempted deliveries, the notice could not be delivered to Father and was returned to DCFS.

That the notice was not successfully delivered to Father does not mean DCFS provided inadequate notice. While part of section 294, subdivision (f)(5) requires notice be sent with "return receipt requested," it does not require DCFS to receive a signed return receipt. (*Ibid*.) That is different from subdivision (f)(2), where a signed return receipt is required. (*Id.,* subd. (f)(2).) Moreover, because Father had already been ordered to return for the section 366.26 hearing by the juvenile court, and DCFS mailed the notice to the residence address he gave them, the

_____

[2] Father argues notice of the November 12, 2025, continued hearing was also inadequate, for the same reasons. The argument is forfeited because it was raised for the first time on appeal. (See *In re Wilford J.* (2005) 131 Cal.App.4th 742, 754 [forfeited claim of defect in notice].)

notice also complied with section 294, subdivision (f)(1). (See *id.*, subd. (f)(5).)

**C. DCFS Had No Obligation to Provide Additional Notice**

Father does not seem to dispute DCFS complied with section 294, but instead argues DCFS also had to show it made "reasonable efforts to notice [him]", and left " 'no stone unturned' " to ensure he actually received the notice. But Father has not identified any relevant authority imposing that additional obligation on DCFS in these circumstances.

First, Father relies upon cases discussing a county welfare department's obligations when a parent's whereabouts are unknown. (See *A.H.*, *supra*, 84 Cal.App.5th at pp. 350–351 ["an alleged father has a constitutionally protected due process right" to notice and an opportunity to appear]; *id.* at pp. 362–363; *In re Daniel F.* (2021) 64 Cal.App.5th 701, 712 ["[t]here is no due process violation where a child welfare services agency has exercised reasonable diligence to provide notice to a parent whose whereabouts are unknown"]; *Jayden G.*, *supra*, 88 Cal.App.5th at pp. 308–310 [search for an alleged father whose "whereabouts were always unknown" was not reasonably diligent]; see also *In re J.R.* (2022) 82 Cal.App.5th 569, 583–585 [the mother's whereabouts remained unknown and she "never appeared, either personally or through counsel"]; *id.* at p. 588.)

We acknowledge DCFS has a "constitutional duty to exercise reasonable diligence to find" parents whose whereabouts are unknown. (*A.H.*, *supra*, 84 Cal.App.5th at p. 350; see also § 294, subd. (f)(7) [describing service procedure if a parent's whereabouts are unknown and the parent cannot be served in usual manner with reasonable diligence].) But we fail to see why

11

that duty is relevant here, when Father's whereabouts were *not unknown* when DCFS sent him the notice in August 2025. (Cf. *A.H.*, at p. 369 [county welfare department had spoken to the father so "his whereabouts were known" (italics omitted)].) DCFS sent the notice to the Tijuana address provided by his counsel on April 11, 2025, and Father's opening brief does not question the accuracy of that address. Instead, he acknowledges DCFS mailed notices "to [Father] at his Tijuana address" on three different occasions.

"The statutory scheme places on the parent the responsibility of keeping DCFS apprised of his or her current mailing address, so that mailed notices do not go awry." (*In re Jennifer O.* (2010) 184 Cal.App.4th 539, 549 (*Jennifer O.*).) It was Father's responsibility to apprise the juvenile court and DCFS of his address. (§ 316.1, subd. (a); Cal. Rules of Court, rule 5.534(i) [parents must provide and update their mailing address].) DCFS has no "duty to track [a parent] continually throughout the dependency process[,] even after he had been identified, contacted by a social worker, apprised of the proceedings, provided with counsel[,] and participated in hearings." (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 441; see also *Jennifer O.*, at p. 550 & fn. 12 [letters sent to address provided by parent were returned].) As we already explained, DCFS complied with its statutory obligation to mail notice of the section 326.66 hearing to Father's Tijuana address. (See § 294, subd. (f)(1), (5).)

Second, Father suggests the August 11, 2025, notice violated his due process rights. But Father never argued in the juvenile court there had been a due process violation, and it is too late for him to do so now. (See *In re Wilford J.*, *supra*, 131 Cal.App.4th at p. 754.)

12

Moreover, we see no merit in a constitutional due process claim. It is undisputed Father personally appeared at several hearings and entered a general denial to the petition. Father was well aware of the pendency of Jason's juvenile court proceedings, he was represented by appointed counsel, and he had an opportunity to defend. (See *Jennifer O.*, *supra*, 184 Cal.App.4th at p. 548 [the father had appeared and was aware of proceedings, so subsequent notice could be provided via statutory procedures].) Father received all the process he was due. (See *In re Mia M.* (2022) 75 Cal.App.5th 792, 807 [" 'due process requires parents be given notice that is reasonably calculated to advise them an action is pending and afford them an opportunity to defend' "]; see also *In re Raymond R.*, *supra*, 26 Cal.App.4th at p. 441 [the father "cannot blame the [county welfare] Department for his disappearance"].)

## II. Remand Is Required to Ensure ICWA and Cal-ICWA Compliance

ICWA and its California counterpart, Cal-ICWA, set standards governing " 'the placement of Indian children outside the family home.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1125 (*Dezi C.*); see also *id.* at p. 1129 [defining Indian child].) Our Legislature has decreed compliance with ICWA is mandatory, and in section 224.2, it has "codifie[d] and expand[ed] on ICWA's duty of inquiry to determine whether a child is an Indian child." (*Dezi C.*, at p. 1131.) That statute sets forth " 'the specific steps a social worker . . . or court is required to take' " to determine if a child may be an Indian child (*Dezi C.*, at p. 1131; see also § 224.2, subd. (a))*,* which include asking " 'extended family members' " (*Dezi C.*, at p. 1132; see also § 224.2, subd. (b)(2)).

13

Here, the juvenile court determined ICWA did not apply. (See § 224.2, subd. (i)(2); *Dezi C., supra,* 16 Cal.5th at p. 1134.) DCFS concedes, however, the record does not show it asked some available extended family members (maternal grandmother, a paternal uncle, and a paternal aunt) about Jason's possible Indian heritage. We agree with the parties that DCFS's Cal-ICWA inquiry was deficient in that regard. (See *Dezi C.,* at p. 1141.)

We therefore conditionally reverse and remand "for compliance with the inquiry requirements of section 224.2," and for the juvenile court to thereafter make further findings regarding the adequacy of that inquiry and the application of ICWA and Cal-ICWA. (*In re Ja.O.* (2025) 18 Cal.5th 271, 291; see also *Dezi C., supra,* 16 Cal.5th at pp. 1137–1138.) "If the juvenile court thereafter finds the inquiry duty has been satisfied and ICWA does not apply, the court shall reinstate [its] order. If the juvenile court concludes ICWA applies, it shall proceed in conformity with ICWA and [Cal-ICWA]." (*In re Ja.O.,* at p. 291.)

## DISPOSITION

The order is conditionally reversed and remanded for the sole purpose of ensuring ICWA and Cal-ICWA compliance. In all other respects, the order is affirmed.

RICHARDSON, Acting P. J.

WE CONCUR:

GOORVITCH, J.          GILBERT, J.*

---

\*      Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.