Filed 12/29/23  N.P. v. Superior Court CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| N.P.,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF MERCED COUNTY,<br><br>    Respondent;<br><br>MERCED COUNTY HUMAN SERVICES AGENCY,<br><br>    Real Party in Interest. | F086941<br><br>(Super. Ct. Nos. 22JP-00098-A, 22JP-00098-B, 22JP-00098-C)<br><br><br>**OPINION** |

### THE COURT[*]

ORIGINAL PROCEEDINGS; extraordinary writ.  Donald J. Proietti, Judge.

N.P., in pro. per., for Petitioner.

No appearance for Respondent.

Forrest W. Hansen, County Counsel, and Ann Hanson, Deputy County Counsel, for Real Party in Interest.

-ooOoo-

---

[*]        Before Detjen, Acting P. J., Snauffer, J. and DeSantos, J.

N.P. (mother), in propria persona, seeks an extraordinary writ (Cal. Rules of Court, rule 8.452)[1] from the juvenile court's orders issued at a contested 12-month review hearing (Welf. & Inst. Code, § 366.21, subd. (f))[2] terminating her reunification services and setting a section 366.26 hearing for January 18, 2024, as to her children R.S. (born January 2015), A.S. (born January 2016), and G.S. (born February 2017) (collectively the children). Mother seeks a writ directing the juvenile court to return the children to her custody or provide reunification services and visitation. We conclude mother's petition fails to comport with the procedural requirements of rule 8.452 regarding extraordinary writ petitions and dismiss the petition.

## PROCEDURAL AND FACTUAL SUMMARY

### *Initial Removal*

In August 2022, the Merced County Human Services Agency (agency) received a referral alleging general neglect and physical abuse of the children by mother. An agency social worker responded to mother's home and spoke with law enforcement. The children were found alone at the home by law enforcement after there were reports of domestic violence between mother and their stepmother, E.P. (stepmother). The social worker observed physical marks, scratches, or bruises on each of the children's bodies, and R.S. had circular marks on his back that were layered and patterned. The children disclosed witnessing domestic violence between mother and stepmother, and they also described how mother and stepmother inflicted physical abuse on a regular basis with belts. Mother denied that the children were ever physically disciplined, and she provided no explanation for the visible injuries to R.S.

The children were placed into protective custody by law enforcement on August 17, 2022. On August 18, 2022, the agency filed an original petition alleging the

---

[1]     All further rule references are to the California Rules of Court.

[2]     All further statutory references are to the Welfare and Institutions Code.

children were described by section 300, subdivisions (a), (b)(1), and (g). The petition alleged the children were at substantial risk of suffering serious physical harm inflicted nonaccidentally by mother. The petition further alleged that mother failed to adequately protect the children from ongoing domestic violence in the home between mother and stepmother. The whereabouts of the children's presumed father, C.S. (father), were unknown. On August 22, 2022, the juvenile court conducted a continued detention hearing where it ordered the children detained, and it set a jurisdiction and disposition hearing for September 29, 2022.

***Jurisdiction and Disposition***

The agency's report on jurisdiction and disposition recommended that the allegations in the petition be found true and family reunification services be provided to mother and father. The children were placed together in a resource family home, and they confirmed their previous reports of physical abuse and domestic violence in the home by mother and stepmother. Mother admitted to spanking the children with her hand or belt for discipline, but she claimed that she never intended to hurt the children. She continued to deny that there was any domestic violence in the home between her and stepmother. Father was located by the agency, and he was currently homeless.

A continued jurisdiction and disposition hearing was held on October 20, 2022, with mother and father present and represented by counsel. Stepmother was also present, and mother's oral request to elevate stepmother to a presumed parent was denied. All parties submitted on the agency's recommendation. The juvenile court found the allegations in the petition true and ordered family reunification services for both parents. As part of her case plan, mother was ordered to participate in domestic violence counseling, parenting classes, and an anger management program. Supervised visitation was ordered between mother and the children at no less than once per month, and a six-month review hearing was set for April 6, 2023.

3.

*Family Reunification Period*

In its report for the six-month review hearing, the agency recommended the juvenile court continue family reunification services for mother and father. Mother was in compliance with the objectives of her case plan. She completed a 14-week domestic violence support group in February 2023 and a domestic violence/anger management program in March 2023. Mother was also participating in a parenting class with the stepmother. She reported that there would no longer be arguing or yelling between her and the stepmother, and they both had respect for each other now. In March 2023, mother's supervised visitation increased to weekly, and she engaged in activities with the children during her visits. At the review hearing held on April 6, 2023, the juvenile court continued family reunification services and set the 12-month review hearing for August 3, 2023.

The agency's report for the 12-month review hearing recommended termination of mother and father's family reunification services. On March 27, 2023, mother indicated that her and stepmother were back together after a brief separation. Mother began participating in individual domestic violence counseling on March 28, 2023, and the appointments occurred over the phone. In April 2023, mother intended to move in with her father because of "issues" in her relationship with stepmother. She informed the social worker that their current separation was due to stepmother trying to physically fight her whenever mother tried to discuss the stepmother's spending at a casino. Mother stopped participating in her services in May 2023 because she was trying to locate a new home.

On July 9, 2023, law enforcement received reports that mother and stepmother were engaging in domestic violence. The report alleged that mother was physically aggressive and vandalized the door of the residence. An additional report was made to the agency on July 19, 2023, which alleged constant fighting and abuse between mother and stepmother. Mother was dropped from her domestic violence counseling, and she

4.

failed to contact the service provider to restart counseling. She denied the reports of recent domestic violence between her and stepmother, and she failed to provide specific answers about her last contact with stepmother.

Mother was scheduled to begin a new parenting class in July 2023, but she chose to enroll in a parenting class that was scheduled to begin in January 2024 due to her work schedule. The report also noted concerns that mother was unable to redirect the children's unsafe behaviors during visitation. Mother cancelled five visits from March 2023 through August 2023 due to conflicts with her work schedule and living arrangements. On August 17, 2023, mother claimed she was living in San Jose for the past month, but she would not provide an address to the social worker. Mother reported that stepmother was arrested after two domestic violence incidents in May 2023. She also claimed that she obtained multiple restraining orders against stepmother, but law enforcement was unable to locate any such restraining orders.

A contested 12-month review hearing was held on September 26, 2023. Mother was present and testified that she was no longer in a relationship with stepmother, and she filed for a divorce. Mother explained that she was unable to attend services because she moved to another county and the classes conflicted with her work schedule. She testified that she was attending a parenting class via video once per week, recently started a class on discipline, and previously completed a few other parenting classes. Mother intended to remain in Santa Clara County, and she believed the children could be safely returned to her with an additional six months of reunification services.[3]

On cross-examination, mother testified that she had been stable and free from domestic violence for the past six months. Mother was unsure if there was an active restraining order, and she claimed the police report from July 9, 2023, was false. She

---

[3]     The agency initially filed a motion to transfer the proceedings to Santa Clara County on June 23, 2023. However, the motion was eventually withdrawn on the date of the contested hearing.

also testified that she last saw stepmother in April 2023, but she eventually acknowledged there were two other incidents where stepmother showed up at mother's work in June 2023  Mother described how the children sometimes hit each other, and she admitted that exposure to domestic violence was partly to blame.  She believed there was "so much" for her to learn, and she was "at the beginning" of working through the trauma.

In closing argument, counsel for the agency and children argued that there was no substantial probability that the children would be returned to mother's care by the end of the 18-month period on February 17, 2024.  Mother's counsel argued that mother's testimony provided sufficient evidence for the juvenile court to find that there was a substantial probability of return.  After hearing argument from counsel, the court followed the agency's recommendation to terminate reunification services.  It did not believe that mother demonstrated a substantial probability that the children would be returned by the next review period.  A section 366.26 hearing was set for January 18, 2024.

## DISCUSSION

### *Relevant Legal Principles and Standard of Review*

At the 12-month review hearing, the juvenile court must order the return of the child to the physical custody of his or her parent unless it finds the return would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child.  (§ 366.21, subd. (f)(1).)  If the court does not return the child, it may continue the case for up to six months if there is a substantial probability the child will be returned to parental custody within 18 months from the time the child was initially removed.  (§ 366.21, subd. (g)(1).)  To find a substantial probability of return, the court must find the parent regularly visited the child, made significant progress in resolving the problems prompting the child's removal, and demonstrated the capacity and ability to complete the objectives of the case plan and provide for the child's safety, protection, and

6.

well-being.  (§ 366.21, subd. (g)(1)(A)–(C).)  Otherwise, the court must terminate reunification services and set a section 366.26 hearing to implement a permanent plan for the child.  (§ 366.21, subd. (g)(4).)  Before the court may terminate services and set a section 366.26 hearing, however, there must be clear and convincing evidence the agency provided reasonable services to the parent.  (§§ 361.5, subd. (a), 366.21, subd. (g)(4).)

We review the juvenile court's findings and orders for substantial evidence, resolving all conflicts in favor of the court, and indulging in all legitimate inferences to uphold the court's ruling.  (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378−1379.)  Under this well-established standard, "we review the record in the light most favorable to the court's determinations and draw all reasonable inferences from the evidence to support the findings and orders.  [Citation.]  'We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court.' "  (*Kevin R. v. Superior Court* (2010) 191 Cal.App.4th 676, 688−689.)

Mother bears the burden on appeal of establishing that the evidence was insufficient to support the juvenile court's findings.  (*In re A.G.* (2017) 12 Cal.App.5th 994, 1001.)  And the juvenile court's order, "like any other judgment or order of a lower court, is presumed to be correct, and all intendments and presumptions are indulged to support the order on matters as to which the record is silent."  (*Gutierrez v. Autowest, Inc.* (2003) 114 Cal.App.4th 77, 88.)

On the issue of whether the court erred by failing to find a substantial probability of return existed, the question on appeal "becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' "  (*In re I.W.* (2009) 180 Cal.App.4th 1517, 1528, disapproved on other grounds by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1003, fn. 4.)  "Put another way, the issue is 'whether the evidence compels a finding in favor of [mother] as a matter of law.' "

7.

(*Valero v. Board of Retirement of Tulare County Employees' Assn.* (2012) 205 Cal.App.4th 960, 966.)

***The Extraordinary Writ Petition***

As a general proposition, a juvenile court's rulings are presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)  A parent seeking review of the juvenile court's orders from the setting hearing must, as mother did here, file an extraordinary writ petition in this court on Judicial Council form JV–825 to initiate writ proceedings.  The purpose of such petitions is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's findings and orders issued at the setting hearing in advance of the section 366.26 hearing.  (§ 366.26, subd. (*l*)(4).)

Rule 8.452 sets forth the content requirements for an extraordinary writ petition. It requires the petitioner to set forth legal arguments with citation to the appellate record. (Rule 8.452(b).)  In keeping with the dictate of rule 8.452(a)(1), we liberally construe writ petitions in favor of their adequacy recognizing that a parent representing him or herself is not trained in the law.  Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record.  Failure to do so renders the petition inadequate in its content and we are not required to independently review the record for possible error.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

Here, mother's petition is inadequate in presenting a claim of error.  She indicated on page 2 of the preprinted "Petition for Extraordinary Writ" form (JV-825) that the juvenile court's order was erroneous on the grounds that she was in compliance with her case plan, all family reunification services were not provided, and reports were biased due to conflicts of interest.  Under the summary of factual basis for the petition, mother states:

> "When asking social worker if [I] can reschedule visits no
> accommodations were made and visits were just cancelled.  Request to
> transfer case to [S]anta [C]lara was not covered fully in court prior to
> 12 month hearing. Conflic[t]s of interest between [s]ocial [w]orkers [a]nd

[a]ttorneys and petitioner. [U]nprofessionalism. Social worker would often hang up on me. Not all services were offered."

Mother did not provide any context from which this court could construe an alleged error by citing to relevant facts in the appellate record or any legal authority. Nowhere in the petition does mother assert that the juvenile court erred in finding it would be detrimental to return the children to her custody. Nor does she challenge the findings underlying the court's order terminating reunification services. She does not, for example, contend the reunification services offered by the agency were not reasonable. Nor does she argue the court should have continued reunification services because there was a substantial probability the children could be returned to her custody after another period of reunification efforts.

A party's "conclusory presentation, without pertinent argument or an attempt to apply the law to the circumstances of this case, is inadequate," and the contention will be found by the appellate court to have been abandoned. (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.) Without citation to authority or to the record, or any discussion supporting her conclusory statements, any challenge to the juvenile court's findings that return of the children would be detrimental, reasonable services were provided by the agency, and there was not a substantial probability of return by the 18-month review hearing must be deemed abandoned. (See *Dills v. Redwoods Associates, Ltd.* (1994) 28 Cal.App.4th 888, 890, fn. 1 [appellate court has no obligation to "develop the appellants' arguments for them"].) Consequently, she failed to raise a claim of reversible error. Therefore, her petition does not comply with rules 8.450 through 8.452 and is inadequate for appellate review.

At oral argument, mother made several complaints regarding her social worker and alleged conflicts of interests. Mother also claimed statements in the social worker's reports were inaccurate, and she reiterated the comments in her petition. However, she still failed to support these claims of error with legal argument or citation to the record as

required. Although we are not required to do so, we have reviewed the record and find sufficient evidence to support the juvenile court's decision to terminate mother's family reunification services. Accordingly, we would find no error in this case were we to review the merits of the court's rulings.

The services set forth in mother's case plan were domestic violence counseling, parenting classes, and anger management. Mother completed domestic violence group counseling and anger management through the agency's referrals. However, mother did not complete the parenting program offered by the agency because of alleged conflicts with her work schedule, and she was scheduled to begin another program in January 2024. Mother also stopped attending her over the phone individual counseling for domestic violence without a valid excuse.

Reunification is a collaborative effort and a parent is presumed capable of complying with a reasonable case plan. (*In re Christina L.* (1992) 3 Cal.App.4th 404, 415.) The parent is responsible for communicating with the agency and participating in the reunification process. (*In re Raymond R.* (1994) 26 Cal.App.4th 436, 441.) If mother felt during the reunification period that her services or visitation were inadequate, she "had the assistance of counsel to seek guidance from the juvenile court in formulating a better plan." (*Christina L.*, at p. 416.)

The agency provided mother with an opportunity to reunify with the children by providing mother with several referrals for services in domestic violence, parenting, and anger management to address the domestic violence and physical abuse in the home. The fact that mother and stepmother continued to engage in domestic violence after her completion of group counseling and a separate program for domestic violence and anger management is reflective of mother's lack of reasonable effort as opposed to the agency's. Furthermore, the only visits missed were cancelled at mother's request, and the record does not indicate that make-up visits were either requested or necessary under the

circumstances. Thus, mother has failed to show the agency's implementation of her case plan and efforts to assist her in complying with it were unreasonable.

Based upon the record before us, we would conclude substantial evidence supports the juvenile court's findings and order. However, we dismiss mother's writ petition because it fails to comport with rule 8.452.

## DISPOSITION

The petition for extraordinary writ is dismissed. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).